USDC-SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC#:
DATE FILED: 9/4/2019

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

TYQUAN HASKINS,

Plaintiff,

v.

OFFICER JOHN DOE #*10271*, CAPTAIN ERSKINE #*1710*, CORRECTION OFFICER FATUROTI #*6214*,

Defendants.

No. 16-CV-8525 (RA)

MEMORANDUM OPINION AND ORDER

---

RONNIE ABRAMS, United States District Judge:

Plaintiff Tyquan Haskins, proceeding *pro se*, commenced this action against various New York City prison officials, asserting claims under 42 U.S.C. § 1983, for alleged violations of his constitutional rights while he was a pretrial detainee at the Anna M. Kross Center ("AMKC") on Rikers Island. Before the Court is Defendants' motion for summary judgment on grounds that Haskins' claims are barred by the terms of a prior settlement agreement between him and the City. For the following reasons, the motion is granted.

## BACKGROUND[1]

Haskins filed the Complaint on October 31, 2016, while he was detained at AMKC. Def's Rule 56.1 Stmt. ¶ 1. Among other things, the Complaint alleges that, on September 28, 2016, Correction Officer Faturoti failed to protect Haskins from an assault by another inmate and that

---

[1] The following facts, construed in the light most favorable to Plaintiff, are drawn from the Complaint and the parties' submissions in connection with the City's summary judgment motion. *See, e.g., Brod v. Omya, Inc.*, 653 F.3d 156, 164 (2d Cir. 2011). Pursuant to S.D.N.Y. Local Civ. R. 56.2, the City provided the required notice to Haskins that if he did not respond to the City's motion with affidavits and/or documents contradicting the City's Rule 56.1 Statement of Material Facts, the Court may accept those facts as true. *See* Dkt. 83. Although Haskins failed to controvert the City's Rule 56.1 Statement in "correspondingly numbered paragraph[s]," in light of his *pro se* status, the Court will still look to his submissions as a whole for factual disagreements with the City's asserted facts. *See John v. Kingsbrook Jewish Med. Ctr.*, 598 Fed. App'x 798, 799 & n.1 (2d Cir. 2015).

Captain Erskine and Officer John Doe subjected him to unlawful force. Specifically, Haskins alleges that Faturoti witnessed another inmate punch him in the head, but "acted like she was busy," and that Doe "kick[ed] and punch[ed] [Haskins] in the lower area below his waist," while Erskine stood on his ankle. Compl. at 3, 12.

Separately, on June 14, 2017, an attorney filed a personal injury claim with the New York City Comptroller's Office, on Haskins' behalf, in connection with a May 21, 2017 incident in which Haskins slipped and fell at AMKC in an area known as the "big yard." *See* Nunez Decl., Ex. B; Pl's Rule 56.1 Stmt. ¶¶ 2–3. A few months later, Haskins settled his slip-and-fall claim with the City, pursuant to a "General Release" agreement dated September 21, 2017 ("the Release"). Pertinent here, the Release provides as follows:

> TYQUAN HASKINS ... as "RELEASOR", in consideration of the payment of $3,500.00, receipt whereof is hereby acknowledged, having received independent legal advice in this matter or having voluntarily, knowingly, and willingly waived the opportunity to seek legal advice, hereby voluntarily, knowingly, and willing releases and forever discharges the City of New York, and all past and present officials, officers, ... [and other employees or representatives] of the City of New York ... collectively the "RELEASEES", from any and all liability, claims, or rights of action alleging a violation of civil rights and any and all claims, causes of action ... and demands known or unknown, at law, in equity, or by administrative regulations, which RELEASOR ... had, now has, or hereafter can, shall, or may have ... against the RELEASEES for, upon or by reason of any matter, cause or thing whatsoever that occurred through the date of this RELEASE.

Nunez Decl. Ex. E, at 1 (Dkt. 82-3). Haskins signed the Release below additional text which states that the "undersigned has read the foregoing release and fully understands it." *Id.* at 2.

On February 2, 2018, the New York City Law Department, on behalf of every then-named Defendant, moved to dismiss all but two of Haskins' claims, pursuant to Fed. R. Civ. P. 12(b)(6). The motion did not mention any release agreement. The Court subsequently granted the motion in its entirety. *See* September 30, 2019 Order (Dkt. 72). Only two claims thus remain in this action:

2

one for deliberate indifference against Faturoti, and one for excessive force against Erskine and Doe.

During an October 24, 2018 conference, in which the Court provided its reasoning on the record in support of its order granting the City's Rule 12(b)(6) motion, the City's counsel informed the Court that it had discovered the Release in litigating another case. *See* Oct. 24, 2018 Hr'g Tr. at 15–16 (Dkt. 76). The City expressed its intent to move to dismiss Haskins' remaining claims here as barred by the terms of the Release, either by a motion to dismiss or a motion for summary judgment. The City subsequently filed the instant motion for summary judgment.

## LEGAL STANDARD

Federal Rule of Civil Procedure 56 authorizes a court to grant summary judgment if the movant establishes that "there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." *Roe v. City of Waterbury*, 542 F.3d 31, 35 (2d Cir. 2008). A fact is "material" if it "might affect the outcome of the suit under the governing law," and it is "genuinely in dispute" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* (citations omitted). In deciding such a motion, the Court must "construe the facts in the light most favorable to the non-moving party and must resolve all ambiguities and draw all reasonable inferences against the movant." *Brod*, 653 F.3d at 164. Furthermore, "it is well established that a court is ordinarily obligated to afford a special solicitude to *pro se* litigants, particularly where motions for summary judgment are concerned." *Harris v. Miller*, 818 F.3d 49, 57 (2d Cir. 2016) (per curiam) (citation and alteration omitted).

3

## DISCUSSION

### I. The Release Bars Haskins' Claims

The City argues that the parties' September 2017 settlement, memorialized in the Release, bars Haskins from bringing this suit. Settlement agreements "are contracts and must therefore be construed according to general principles of contract law." *Collins v. Harrison-Bode*, 303 F.3d 429, 433 (2d Cir. 2002). Under New York Law, "the fundamental basis of a valid, enforceable contract is a meeting of the minds of the parties." *Opals on Ice Lingerie v. Bodylines Inc.*, 320 F.3d 362, 372 (2d Cir. 2003). And a contract such as "[a] release that is clear and unambiguous on its face and which is knowingly and voluntarily entered into will be enforced." *Arzu v. City of New York*, No. 13-CV-5980 (RA), 2015 WL 4635602, at *4 (S.D.N.Y. Aug. 3, 2015).[2]

The Release, which is one and a half pages in length, unambiguously bars Haskins from pursuing "any and all . . . rights of action alleging a violation of civil rights" against all "past and present" New York City officers or other employees "for, upon[,] or by reason of any matter, cause[,] or thing whatsoever that occurred through the date of this RELEASE,"—i.e., September 21, 2017. This case is undisputedly (1) a civil rights action brought pursuant to 42 U.S.C. § 1983; (2) against past or present officers of the City of New York; that (3) is "by reason of" actions— namely, Erskine and Doe's alleged use of excessive force on Haskins, and Faturoti's alleged indifference in witnessing an assault on Haskins—that were completed well before September 21,

---

[2] The parties' briefs assume that New York substantive law governs Plaintiff's claims, and "such implied consent is, of course, sufficient to establish the applicable choice of law." *Arch Ins. Co. v. Precision Stone, Inc.*, 584 F.3d 33, 39 (2d Cir. 2009). The Court therefore applies New York law in deciding this motion. *See Lloyd v. City of New York*, No. 15-CV-8539 (RJS), 2017 WL 2266876, at *2 (S.D.N.Y. May 22, 2017) (applying New York law when "the General Release [did] not include a choice of law provision" because the parties had "impliedly manifested their acquiescence to New York law controlling the interpretation of the General Release by relying exclusively on New York law in their submissions").

4

2017. When considering such an "unambiguous contract[], a party's subjective intent and understanding of the terms is irrelevant." *HOP Energy, L.L.C. v. Local 553 Pension Fund*, 678 F.3d 158, 162 (2d Cir. 2012). Haskins' contention that he thought the Release applied only to his personal injury claim premised on his slip-and-fall at AMKC is thus of no moment. He is, accordingly, barred from bringing this action against Defendants. Indeed, "courts in this Circuit have consistently concluded that similarly phrased releases between federal civil rights claimants and the City of New York bar suit against the City and its employees for alleged conduct predating the release." *Lloyd*, 2017 WL 2266876, at *3 (citation omitted) (citing cases).

## II. The Release is Not Void

"Although a defendant has the initial burden of establishing that it has been released from any claims, a signed release shifts the burden" to the plaintiff "to show that there has been fraud, duress or some other fact which will be sufficient to void the release." *Centro Empresarial Cempresa S.A. v. América Móvil, S.A.B. de C.V.*, 17 N.Y.3d 269, 276 (2011). Here, Haskins asserts several arguments as to why the Release is void. Each of them fails.

First, Haskins contends that the Release is not enforceable on grounds that there was never a "meeting of the minds" between the parties because his counsel purportedly did not review the terms of the agreement with him before he signed it. *See* Pl's Mem. Opp. at 3, 5. In support of this argument he cites *Smith v. City of New York*, in which the court rejected the City's position that the plaintiff's claims were barred as a matter of law by an earlier release agreement. No. 12-cv-4851-ERK-LB, 2014 WL 6783194, at *7 (E.D.N.Y. Dec. 2, 2014). There, however, the court denied the City's motion for judgment on the pleadings because the terms of the release were ambiguous—not because the plaintiff had not reviewed them with his lawyer. *See id.* (explaining that "the documents are ambiguous" and denying the City's motion "for that reason"). Haskins

5

also notes that the *Smith* court stated that "the City procured [the plaintiff's signature] without consulting counsel." *Id.* at *1. Here, by contrast, the City received the executed Release directly from Haskins' counsel herself, along with a cover letter. *See* Nunez Decl. Ex. C. *Smith* is thus inapposite.

Although Haskins alleges that his lawyer was not responsive to his inquiries, generally, he waited only five days from the date he received the Release before sending her a signed copy. *See* Pl's Mem. Opp. at 3. In other words, Haskins had the opportunity to consult with counsel before signing the agreement but chose not to do so. His lawyer's alleged unresponsiveness does not raise a triable issue of fact as to whether there was a "meeting of the minds" between the parties, or whether Haskins otherwise signed the Release unknowingly or involuntarily.[3]

Haskins' additional arguments that the Release is void because he signed it under duress, or undue influence from counsel, have no basis in law or fact. Nothing in the record supports the notion that he was subject to a wrongful threat that "precluded the exercise of his free will," as required to establish that the Release was procured by duress. *Interpharm, Inc. v. Wells Fargo Bank, Nat. Ass'n*, 655 F.3d 136, 142 (2d Cir. 2011). Similarly, Haskins points to no evidence even suggesting that his lawyer exerted undue influence over him. In fact, as noted, he explains that he signed the Release outside the presence of counsel, and that he relied upon a *notary* who purportedly told him that the Release was unrelated to his claims in this case. *See* Pl's Mem. Opp. at 3 (alleging that a notary told Haskins that the Release "didn't have anything to do[]" with his claims in federal court based on the claim number on the Release). To the extent Haskins intended

---

[3] By comparison, when considering whether a signed release may preclude a plaintiff from bringing a federal employment discrimination claim—in which courts apply a "more rigorous and subjective voluntariness test" that "departs from ordinary contract principles"—New York courts have highlighted that the "absence of counsel is far less critical than the opportunity to consult counsel." *Mandavia v. Columbia Univ.*, 912 F. Supp. 2d 119, 129 (S.D.N.Y. 2012), *aff'd*, 556 Fed. App'x 56 (2d Cir. 2014); *Parker v. Chrysler Corp.*, 929 F. Supp. 162, 167 (S.D.N.Y. 1996). The fact that Haskins had such an opportunity here, where ordinary contract principles *do* apply, further supports the conclusion that his signing of the Release was not unknowing or involuntary.

6

to argue that the notary exerted undue influence over him, he has not adequately alleged that the notary had the requisite motive to do so and that "but for [such] undue influence," he would not have signed the agreement. *See Belda v. Doerfler*, No. 14-cv-941 (AJN), 2015 WL 5737320, at *5 (S.D.N.Y. Sept. 30, 2015), *appeal dismissed*, No. 15-3526 (2d Cir. Jan. 7, 2016); *Kotick v. Shvachko*, 14 N.Y.S.3d 8, 9 (2d Dep't 2015). To the contrary, he states that he mailed the signed Release to his lawyer asking whether "what [he] was told . . . by the notary was . . . true or not." Pl's Mem. Opp. at 3.

Nor does Haskins adequately allege that the Release is void on grounds of unilateral mistake. "A unilateral mistake, standing alone, does not suffice as a predicate for relief." *Angel v. Bank of Tokyo-Mitsubishi, Ltd.*, 835 N.Y.S.2d 57, 59 (1st Dep't 2007). While a "unilateral mistake induced by fraud" may support a claim for rescission of an agreement, *id.*, Haskins has not alleged the existence of any fraud.

Haskins' memorandum does not address whether he lacked legal capacity to sign the Release, but he submits several medical records, stating in his declaration that they "create a genuine issue of material fact" as to his competency. Haskins Decl. ¶ 17 (Dkt. 91). The Court disagrees. It is true that the self-reported section of one of the medical records appears to indicate that Haskins informed a doctor on October 20, 2016 that he suffered from anxiety, depression, and schizophrenia, *see* Haskins Decl. Ex. G, and a chart describing Haskins' "medical history" references "antisocial personality" and "mood disorder in 2014," and an unspecified "psychiatric disorder or problem" in 2015, Haskins Decl. Ex. I. But neither these records, nor any of the others submitted, address whether or how Haskins' ability to comprehend the unambiguous, one-and-a-half-page Release may have been impacted. *Cf. Smith*, 2014 WL 6783194, at *5 (finding that plaintiff raised issues of fact regarding his "competence at the time he signed the [agreement]," in

7

light of a report from the Department of Corrections stating that his reading comprehension was "equivalent to that of an eight-year-old" in addition to his established "history of chronic paranoid schizophrenia" and other mental illnesses). Likewise, Haskins' general assertions that his vision is poor, when combined with a medical record indicating that he has 20/30 vision, do not reasonably rebut the City's evidence that he signed the Release knowingly and voluntarily. *See* Pl's Rule 56 Stmt. ¶ 11. Moreover, another court in this district has already held that these exact medical records do not raise a genuine issue of fact as to whether Haskins was competent to execute the identical release at issue in this case. *See Haskins v. New York*, No. 1:17-cv-540 (ALC), 2019 WL 1284076, at *5–6 (S.D.N.Y. Mar. 20, 2019). This Court reaches the same conclusion.

In short, the Release unambiguously bars Plaintiff's claims against the City, and there are no genuine issues of material fact as to whether the Release is void. Defendants are thus entitled to summary judgment.

**III. Leave to Replead**

Finally, Haskins' request for leave to file a supplemented complaint, *see* Dkt. 89, is denied. The "court should freely give leave [to amend] when justice so requires." Fed. R. Civ. P. 15(a)(2). "District courts generally grant a *pro se* plaintiff an opportunity to amend a complaint to cure its defects, but leave to amend is not warranted where it would be futile." *Boone v. Codispoti & Assocs. P.C.*, No. 15-CV-1391 (LGS), 2015 WL 5853843, at *5 (S.D.N.Y. Oct. 7, 2015) (citing *Hill v. Curcione*, 657 F.3d 116, 122–24 (2d Cir. 2011). Amendment is futile when "[t]he problem with [a plaintiff's] causes of action is substantive" and "better pleading will not cure it." *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000). Such is the case here—better pleading cannot cure

the fact that Haskins' claims are barred by an unambiguous release, the validity of which cannot reasonably be questioned based on the evidence in the record.

## CONCLUSION

For the foregoing reasons, Defendants' motion for summary judgment is granted and Plaintiff's motion to supplement the Complaint is denied. The Clerk of Court is respectfully directed to terminate the motion pending at Dkt. 80, enter judgment in favor of Defendants, and close this case.

SO ORDERED.

Dated: September 4, 2019
New York, New York

Ronnie Abrams
United States District Judge